FILED
United States Court of Appeals
Tenth Circuit

February 1, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

BARRY B. ADAMSON,
PATRICIA ADAMSON, and
JESSICA CURL,

      Plaintiffs-Appellants,

v.

MULTI COMMUNITY DIVERSIFIED
SERVICES, INC., and
CARTRIDGE KING OF KANSAS, INC.

      Defendants-Appellees.

No. 05-3478

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 03-CV-04191-RDR)**

Beth Regier Foerster, McCullough, Wareheim & LaBunker, PA, Topeka, Kansas, for Plaintiffs-Appellants.

Arthur E. Palmer, Goodell Stratton Edmonds & Palmer LLP, Topeka, Kansas, for Defendants-Appellees.

Before **TACHA**, Circuit Judge, **EBEL**, Senior Circuit Judge, and **KANE**,[*] Senior District Judge.

**KANE**, Senior District Judge.

---

   [*] The Honorable John L. Kane, Jr., Senior United States District Judge for the District of Colorado, sitting by designation.

———————————

This is an appeal from the entry of summary judgment in a non-profit corporate employer's favor on federal age and sex discrimination claims brought by plaintiff family members after they were simultaneously terminated from their employment by the corporation's board of directors. Plaintiffs also appeal from the district court's decision declining to exercise supplemental jurisdiction over their state law claims for breach of implied contract and defamation.

In the proceedings below, Barry Adamson, Patricia Adamson and daughter Jessica Curl claimed they were terminated based on their status as "husband, wife and daughter" in contravention of the prohibition against sex-discrimination in Title VII of the Civil Rights Act of 1964. Mr. Adamson, 56 at the time of his termination, also claimed discrimination on the basis of age in violation of the Age Discrimination in Employment Act. Defendants moved for summary judgment, asserting that, while no cause was required to terminate any of the Adamsons, who were at-will employees, Mr. Adamson was terminated based on legitimate concerns over money transfers and other unilateral actions he had taken as the corporation's Chief Executive Officer, and because his hiring and direct supervision of his wife and daughter to work for the new corporation were ill-advised under the company's discretionary anti-nepotism policy. Defendants also argued daughter Jessica's position was simply eliminated as unnecessary. Defendants denied sex or age discrimination entered into the board's employment decisions.

Applying the standard analysis under *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), the district court rejected Plaintiffs' claims on various grounds, including that Mr. Adamson had failed to establish a prima facie case of age discrimination and that none of the Plaintiffs had adduced sufficient evidence of pretext to avoid summary judgment on their sex discrimination claims. The district court also determined Jessica had failed to come forward with sufficient evidence to support even a prima facie case of gender-based discrimination in her termination under *Amro v. Boeing Co.*, 232 F.3d 790, 797 (10th Cir. 2000), and concluded Defendants were entitled to summary judgment on this alternate basis as well.

We affirm the district court's determination that Barry Adamson failed to establish a prima facie case of age discrimination. We generally affirm the entry of summary judgment against Plaintiffs on their Title VII sex-discrimination claims, but articulate additional and alternate reasons for that decision. Specifically, we reject the assertion that "familial status" is a protected classification under Title VII and therefore dismiss Plaintiffs' claims that they were discriminated against because they were "husband, wife and daughter" as outside Title VII's scope. Our *de novo* review of the record convinces us, moreover, that no independent claims for gender-discrimination survive this ruling because, as presented by Plaintiffs, those claims are inextricably entwined with their "familial status" theory of relief.

Alternatively, and because the district court engaged in the analysis, we review Plaintiffs' individual gender discrimination claims under the traditional *McDonnell*

3

*Douglas* framework as well. The female Adamsons' claims are analyzed under the standards for assessing Title VII discriminatory discharge claims under *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220 (10th Cir. 2000) and *Plotke v. White*, 405 F.3d 1092 (10th Cir. 2005), while Barry's claim is properly analyzed as one for reverse discrimination under *Notari v. Denver Water Dep't*, 971 F.2d 585, 588-91 (10th Cir. 1992).

Both analyses require Plaintiffs to present facts giving rise to an inference that each was terminated on the basis of his or her gender. Because reverse discrimination requires a determination that defendant is the "unusual" employer that discriminates against the traditionally favored class of men, rather than women, Barry's burden is higher, requiring proof of "background circumstances" tending to establish that fact or, in the alternative, that but for his status of being a man, he would not have been terminated. *Notari*, 971 F.2d at 591. Mr. Adamson's evidence falls short of either standard, and Defendants are entitled to summary judgment on his Title VII claim without reference to pretext.

The female Adamsons' claims have marginally more heft based on allegations that (1) the company applied its anti-nepotism policy to terminate them while it did not apply it to terminate a set of similarly situated male employees and (2) assertions that Plaintiffs' terminations were premised in part on concerns Mr. Adamson would exercise "undue influence" over them if they remained with the company. Applying the appropriate standards under *Kendrick* and *Plotke*, however, we conclude this evidence, too, fails to

4

support a claim for gender discrimination independently of Plaintiffs' claims of "familial status" discrimination because neither gives rise to the requisite inference of *gender*-based discriminatory animus.

Alternatively, we agree with the district court that the facts marshaled fail to establish Defendants' stated reasons for firing Patricia and Jessica were but pretexts for gender (rather than family-based) discrimination, and affirm the grant of summary judgment on that alternate basis as well.

We perceive no error or abuse of discretion in the district court's decision to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

## I. FACTS AND PROCEDURAL HISTORY

Barry Adamson, his wife Patricia and daughter Jessica Curl appeal the district court's rejection of their employment discrimination claims arising out of their termination by the board of directors of Multi Community Diversified Services (MCDS) – a nonprofit corporation with a mission to assist disabled persons – and MCDS's wholly-owned franchise, Cartridge King of Kansas, Inc. (CKK). Barry and Patricia Adamson, together with their daughter, Jessica Curl, filed suit against MCDS and CKK, asserting both federal and state law claims related to their terminations by the MCDS board of directors on the same day in October 2002. The terminations occurred just three months after Barry, as MCDS's Chief Executive Officer, acted to incorporate the company's Cartridge King operations as a separate entity and to hire his wife and daughter as CKK's business manager and sales representative, respectively. At the time of their terminations,

5

Barry had been with MCDS for nine years and Patricia had been with the company for 16 months. Jessica, a college student at the time, had worked at MCDS off and on throughout her high school years.

Plaintiffs contend the board approved the hiring of Patricia Adamson as CKK's business manager knowing she was Barry's wife and that Barry would be supervising her. Jessica's position did not require board approval. According to Plaintiffs, their terminations came without warning and without explanation. Reasons later given were that Mr. Adamsons' unilateral management style and actions with respect to CKK, and in particular money transfers from MCDS to CKK, had raised eyebrows and alienated employees, and that the board was concerned the family's employment relationships were ill-advised and within the scope of the company's anti-nepotism policy.[1] The board replaced Adamson as CEO with Sherry Plenert, a long-term female employee of the company, who was 63 at the time.

---

[1] In the employee handbook, the anti-nepotism policy is stated as follows:

Employment of Relatives

We have no general prohibition against hiring relatives. However, a few restrictions have been established to help prevent problems of safety, security, supervision and morale.

We will accept and consider applications for employment from relatives of current employees. Parents, grandparents, children, spouses, brothers, sisters, or in-laws will, generally, not be hired or transferred into positions where they directly supervise or are supervised by another close family member . . . .

6

The Adamsons filed suit, claiming their terminations pursuant to the anti-nepotism policy constituted unlawful sex-based discrimination against them as "husband, wife and daughter" in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. ("Title VII"). Mr. Adamson also claims his termination was the result of age-discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (the "ADEA"). Plaintiffs deny Mr. Adamson engaged in any wrongdoing in his activities related to CKK and, pointing to the "undue influence" comment and the fact Defendants did not terminate a father-son duo who worked for the company pursuant to the anti-nepotism policy, contend Defendants' anti-nepotism concerns were but pretexts for age and sex-based discrimination. Barry Adamson also contends the fact he mentioned an intent to retire sometime in the "near future" to a board member shortly before his termination gives rise to an independent inference of age-discrimination sufficient to withstand summary judgment.

Each of the Plaintiffs also asserted state law breach of implied employment contract claims premised on a failure of the company's progressive discipline policy and claims for violations of the Kansas Wage Payment Act. Mr. Adamson also asserted a claim of defamation against the board based on members' statements regarding funds transferred from MCDS to CKK.

The district court granted Defendants' motion for summary judgment on the federal discrimination claims and dismissed the state law claims without prejudice pursuant to 28 U.S.C. § 1376. In rejecting Mr. Adamson's ADEA claim, the court

7

determined Mr. Adamson had failed to establish a prima facie case that his termination was related to his age for purposes of inferring discriminatory animus. The district court analyzed the parties' sex-discrimination claims under the three-part framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

Acknowledging it was "peculiar" for a husband and wife to be arguing simultaneously that their respective terminations by a single employer were the result of anti-male discriminatory animus on the one hand and anti-female discriminatory animus on the other (Aplt. App. III at 572 (11/17/05 Mem. & Order)), the district court nevertheless presumed each had made a prima facie case of sex-discrimination and ruled against them on the issue of pretext.[2] While we agree with the end result reached by the district court, we confront head-on the Adamsons' "familial status" theory of relief to determine whether discrimination on the basis of individuals' status as "husband, wife and daughter"(*id.* Vol. II at 395 (Response to Defs.' Mot. Summ. J.)) fit within Title VII's scope in the first instance. Concluding it does not, we then assess whether any of the

---

[2]    By contrast, the district court held Jessica to her burden of establishing a prima facie case, concluding she had failed to raise the requisite initial inference of gender-based discrimination under *Amro v. Boeing Co.*, 232 F.3d 790, 797 (10th Cir. 2000) and *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005)(while a prima facie test for sex discrimination is flexible, at a minimum plaintiff must demonstrate the adverse employment action occurred "under circumstances giving rise to an inference of unlawful discrimination"). Aplt. App. III at 575-76. Specifically, the court rejected Jessica's assertion that the failure to apply the anti-nepotism policy to a father and son also working for the company gave rise to an inference either that the policy was used to promote sex-discrimination or that, but for her gender, Jessica would not have been fired. *Id.* at 574-75. Without any evidence of other circumstances giving rise to an inference of unlawful discrimination, the court concluded summary judgment under *Amro* was appropriate. *Id.* at 578.

Plaintiffs has established a prima facie case of gender-based discrimination.  While we understand the utility of district courts skipping the prima facie inquiry on motions for summary judgment in order to proceed directly to the question of pretext, we believe the approach ill-applied in the context of reverse discrimination claims, where heightened standards are necessary for a prima facie showing to preserve the integrity of the statute and Congress's intent in enacting it, or in cases where, as here, female plaintiffs' claims are presented under circumstances where the discriminatory intent asserted is not actionable and where true gender-based discrimination is not apparent from the facts alleged.

Finally, and while we agree generally with the assertion that pretext evidence – i.e., the fact that Defendants applied the anti-nepotism policy inconsistently with regard to the Adamson family – may be useful in multiple stages of a Title VII case and may be considered under appropriate circumstances in assessing the prima facie case, *see Mickelson v.  New York Life Inc.  Co.*, 460 F.3d 1304, 1317 (10th Cir.  2006)(considering employer's proffered reason for firing plaintiff at causal-connection stage of retaliation prima facie case), we reject Plaintiffs' assertion that such evidence satisfies their individual prima facie burdens here.  By conflating evidence tending to cast doubt on an employer's stated reasons for an employment decision with the burden of establishing an inference of actionable discriminatory animus in the first instance, Plaintiffs seek to gain the benefit of that inference without having to establish it.  Without a demonstrable nexus between dispersions cast on an employer's stated reasons and invidious intent, evidence

9

of "pretext" merely establishes that an employer's stated reason for its actions may not be its real or only reason. It does not establish that the real or "but-for" reason was unlawful discrimination.

## II. DISCUSSION

The issues presented by the individual family members on appeal are: (1) whether the district court properly granted summary judgment for MCDS on Barry Adamson's age discrimination claim; (2) whether the district court properly granted summary judgment for MCDS on Plaintiffs' individual claims for "familial status" and sex discrimination; and (3) whether the district court properly declined to exercise supplemental jurisdiction over the state claims. While the Adamsons agree generally that the three-step *McDonnell Douglas* framework applies to their claims, they alternately suggest their evidence of pretext constitutes direct evidence of both age and sex discrimination obviating the need for a prima facie showing, or that it is sufficient, without more, to make that showing in the first instance.

While we agree a trier of fact may infer discriminatory intent from facts that also support a finding of pretext, we reject the reverse assertion that evidence of "pretext," i.e. that an employer's stated reasons for an employment decision are inaccurate or untrue, compels it. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993)(proof of pretext does not automatically entitle a discrimination plaintiff to judgment because, occasionally, the reason given for a decision that turns out to be pretextual may nonetheless be nondiscriminatory). Here, for example, where Plaintiffs' sex-

10

discrimination claims are premised on an inactionable claim based on anti-family animus, proof of pretext will not, without more, transform those claims into actionable claims for gender-discrimination.

### A. Applicable Legal Standards.

We review the district court's decisions on motions for summary judgment de novo, applying the same standard as the district court. *See Trujillo v. University of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1213 (10th Cir.1998). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Id.*

The burden of showing that no genuine issue of material fact exists is borne by the moving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998). Where, as here, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy this burden by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id*. at 671. In considering a motion for summary judgment, this court draws all reasonable inferences in favor of the nonmoving party. *See Curtis v. Oklahoma City Public Sch. Bd. of Ed.*, 147 F.3d 1200, 1214 (10th Cir.1998). If no genuine issue of

11

material fact is in dispute, this court then determines whether the substantive law was correctly applied by the district court. *See Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996).

A plaintiff can prove age or sex discrimination with direct or circumstantial evidence. *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000)**.** Direct evidence demonstrates on its face that the employment termination was discriminatory. *Ramsey v. City & County of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990). Circumstantial evidence permits the fact finder to draw a reasonable inference from facts indirectly related to discrimination that discrimination, in fact, has occurred. *Stone*, 210 F.3d at 1136. Plaintiff has the ultimate burden of proving, either directly or indirectly, that defendant intentionally discriminated against him. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 260 (1981).

Where a plaintiff relies on circumstantial evidence, the Supreme Court has established a three step burden-shifting framework for determining whether a plaintiff's evidence raises an inference of invidious discriminatory intent sufficient to survive summary judgment. *McDonnell Douglas*, 411 U.S. at 802-05. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). This three-step analysis first requires the plaintiff to prove a prima facie case of discrimination. *Id.* If plaintiff establishes a prima facie case, the burden of going forward shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions. *Id.* "If the defendant does so, the plaintiff must either show that his race, age, gender, or other illegal consideration was a

12

determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext." *Id.*

A plaintiff may establish pretext by showing that the employer's proffered reason for acting adversely towards him is unworthy of belief. *See Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). Plaintiff may also survive summary judgment by introducing affirmative evidence of a discriminatory motive. *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1249-50 (10th Cir. 2002); *Stone*, 210 F.3d at 1137. The plaintiff does not have the burden of proving a defendant's proffered reasons were false, or that a discriminatory factor was the "sole" motivating factor in the employment decision. *James v. Sears Roebuck & Co., Inc.*, 21 F.3d 989, 992 (10th Cir. 1994). Instead, the employee must show that unlawful intent was a "determining factor" and that the decision violates the statute. *Sanchez v. Philip Morris, Inc.*, 992 F.2d 244, 246-47 (10th Cir. 1993) (citing *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312 (10th Cir. 1992)).

## B. Barry Adamson's ADEA Claim.

In termination cases, a prima facie case of age discrimination ordinarily requires the plaintiff to show that he or she was: (1) within the protected class of individuals 40 or older; (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a younger person, although not necessarily one less than 40 years of age. *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557-60 (10th Cir. 1996)(citing cases)). While the elements of a prima facie case under the *McDonnell-Douglas* framework are

13

neither rigid nor mechanistic, their purpose is the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor. *See id.* at 558 (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996)). In the absence of facts tending to establish this initial inference, plaintiff is not entitled to the presumption of discrimination and a defendant is not required to defend against the charge. *Id.*

In the instant case, the district court granted MCDS summary judgment on Barry Adamson's age discrimination claim based on his failure to establish the fourth element of his prima facie case. Age 56 at the time of his termination, Adamson was replaced as CEO by MCDS's then-CFO, Sherry Plenert, who was 63. While replacement by an older or insignificantly younger worker does not per se doom a prima facie case if both are within the protected age group, the evidence must nevertheless be adequate to create an inference that the adverse employment decision *was*, in fact, motivated by plaintiff's age. *O'Connor* at 312 (fact one person in protected class has lost out to another person in protected class "irrelevant, so long as he has lost out *because of his age*")(emphasis added)). We agree that in this case, in the absence of any other direct or circumstantial evidence establishing the requisite inference, replacement by an undisputedly qualified individual seven years older than plaintiff fails, *a fortiori*, to satisfy the fourth element of a prima facie case.

Adamson relies on *Greene* to argue his case presents the "extraordinary" situation in which the failure to establish the fourth element of a prima facie case is not fatal to his

14

claim.  Specifically, Adamson contends comments he made to a board member regarding plans to retire some time in the future give rise to an inference that the board's subsequent decision to terminate his employment was discriminatorily motivated independent of any inference established or not established by meeting the fourth prong of the prima facie case.  Adamson conflates the analytical schemes applicable when a plaintiff sets out to prove discriminatory intent via direct, as opposed to indirect, evidence and misapplies *Greene.  See Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1118 (10th Cir. 2007)(where plaintiff relied exclusively on the *McDonnell Douglas* burden-shifting framework, not on direct evidence of discrimination, any value *Greene* had to her case was "strictly through analogy").

   *Greene* involved a situation in which plaintiff, a 52 year-old Safeway store manager who had worked for the company for 33 years, was replaced in his management position by a 57 year-old co-worker.  At trial on his age discrimination claim, plaintiff adduced evidence establishing that, given his long tenure with the company, he had been grandfathered into the company's pension plan and was 28 months away from vesting in the plan at the time he was replaced.  Through the direct testimony of company managers and others, Greene established that his replacement, by contrast, was not eligible for a pension and that this was a factor in Safeway's decision to replace him.  On Safeway's Rule 50(a) motion at the close of the evidence, however, the district judge agreed plaintiff's replacement by an older, not younger, worker was "'problematic'" for purposes

15

of the prima facie case and entered judgment as a matter of law in Safeway's favor. *Id.* at 556.

We reversed, finding that based on the evidence submitted at trial, Greene had presented a submissible case of discrimination independent of the *McDonnell Douglas* framework and the fourth prong of the prima facie case based on other direct and circumstantial evidence of age discrimination, i.e., that Safeway replaced Greene, on the basis of age, in order to avoid having to pay him grandfathered pension benefits. *Greene*, 98 F.3d at 560. The fact that his replacement was older than he was not relevant to this independent evidence of age-based discrimination, and hence Greene's failure to comport with the fourth prong of his prima facie case under *McDonnell Douglas* was not fatal to his claim and could not be used to take the case from the jury. *See id.* In the instant case, Adamson does not offer his statements regarding plans to retire as affirmative evidence of discrimination independent of the *McDonnell Douglas* analysis or his prima facie case. More importantly, he does not link his statements regarding retirement either to Plenert or to the board's motivation in replacing him. Instead, Adamson leaps from the fact of his statements to the holding in *Greene*, saying the board's knowledge of his plans to retire "some time" in the future creates the inference of age discrimination irrespective of the prima facie case. The argument, if accepted, would vitiate the ADEA itself: the contemplation of retirement "some time" in the future is common throughout the protected class by definition.

16

Facts demonstrating Adamson had disclosed to board members some months before his termination an unspecified plan to retire have no nexus to, and fall short of any independent evidence of, the discriminatory animus evidenced in *Greene*. They do not, without additional facts tending to distinguish Plenert on that basis and linking the distinction to the board's replacement decision, provide a basis for allowing Adamson to proceed independently of the *McDonnell Douglas* framework or otherwise excuse him from having to make his prima facie case. *See Timmerman* at 1118 (failure to come forth with evidence that might arguably show nexus between employer's alleged bias against older employees and plaintiff's termination fatal to age discrimination claim).

We affirm the entry of summary judgment in Defendants' favor on Mr. Adamson's ADEA claim.

C. Title VII Sex Discrimination Claims.

Plaintiffs' Title VII claims are two-fold. First, Plaintiffs collectively contend that, because their terminations were made based on their individual status as "husband, wife and daughter," which they contend are inherently sex-based, they have stated a prima facie case of sex-based discrimination for purposes of the *McDonnell Douglas* framework. Plaintiffs deny the company is entitled to summary judgment on this claim because its proffered reason for their terminations – concerns about Mr. Anderson's management decisions and monetary transfers to CKK and his direct supervision of his wife and daughter as CKK staff – are not only unworthy of belief, but constitute direct evidence of the company's intent to discriminate against them as "husband, wife and

17

daughter." Mr. Adamson denies any misfeasance or wrongdoing as CEO and together with his wife and daughter, asserts the fact the anti-nepotism policy was not applied to a father and son also working for the company establishes they were targeted on the basis of their familial, i.e., gender-based, status. Each also contends a board member's stated concern that Barry would exert "undue influence" over his wife and daughter constitutes direct evidence of sex-based discrimination – against Barry as a man who ostensibly would unduly influence women and Patricia and Jessica as women who would be so influenced. We address both assertions below.

*Discrimination based on "familial status."*

Plaintiffs' contrary assertion notwithstanding, Title VII protects neither the family unit nor individual family members from discrimination based on their "familial status" alone. The district court avoided the issue, simply stating the Adamsons' sex-discrimination claims based on their status as "husband, wife and daughter" was "even more enigmatic than Barry's age discrimination claim" but opting to presume the existence of a prima facie case in order to rule definitively on the issue of pretext. The district court recognized this approach was "somewhat peculiar" given the implicit assertion that MCDS was the type of employer that discriminated both against men and women simultaneously, but proceeded in this manner because Defendants would prevail on the issue of pretext in any event. Aplt. App. III at 570, 572.

While we recognize the utility of such an approach in this particular case, where evidence casting doubt as to the merit of the employer's proffered reasons is scarce, we

18

cannot endorse it as a general matter. Requiring employers to answer and engage in costly discovery to refute an inference of "discrimination" that is not otherwise actionable is both inefficient and unjust.

"Familial status" is not a classification based on sex any more than is being a "sibling" or "relative" generally. It is, by definition, gender neutral. The use of gender to parse those classifications into subcategories of "husbands, wives and daughters" is a social and linguistic convention that neither alters this fact nor elevates those subcategories to protected status. Discrimination on the basis of "familial status" gains traction as a sex-based distinction under Title VII only with reference to the anti-nepotism policy at issue in this case, and the female Adamsons' contention that the board applied the policy to promote gender-based discrimination, which we address below.

Mr. Adamson's claim that he was terminated in violation of Title VII based on his status as Patricia's "husband" (and Jessica's "father"), and Patricia and Jessica's claims that they were terminated by virtue of being Barry's "wife" and "daughter," respectively, fall outside the scope of Title VII and its purpose in protecting employees against invidious discrimination on the basis of sex, and we reject those claims without reference to *McDonnell Douglas* or its burden-shifting framework. To the extent the district court presumed the existence of a prima facie case of sex-based discrimination under Title VII based on "familial status," the presumption was erroneous and we reject it. Assertions that an employer discriminated against an individual on the basis of his or her "familial status" alone state no cognizable cause of action under Title VII.

19

*Reverse Sex-Based Discrimination - Barry Adamson.*

As previously stated, Barry Anderson claims the board discriminated against him on the basis of sex by applying the anti-nepotism policy to target him and out of a discriminatory concern that he, "as a man," would exercise "undue influence" over his wife and daughter as women. The district court approached this claim without reference to *Notari* or the heightened standards a plaintiff who is not a member of the traditionally disfavored class must meet to make a prima facie case of sex discrimination under Title VII. Instead, the district court presumed the existence of a prima facie case and entered summary judgment against Adamson based on the failure of his evidence to create an inference of pretext.

We conclude Barry's reverse discrimination claim premised on the company's selective application of the anti-nepotism policy falls with his claim based on familial status. While Barry incants the phrase "as a man" in his claim, he makes clear his purpose in targeting the company's application of its anti-nepotism policy is not to demonstrate reverse discrimination under *Notari*, but to reveal the company's "true" purpose was to terminate him on the basis of his familial status as Patricia's husband and Jessica's father. According to Barry, the anti-nepotism policy was applied to fire him, his wife and daughter while a father and son also working at the company were not fired. Because discriminating against him as "husband" and "father" is not actionable discrimination under Title VII, "direct evidence" of such an intent states no cognizable claim for relief.

20

Viewing Barry's allegations through the *McDonnell Douglas* paradigm as stating a claim for reverse gender discrimination under *Notari* is similarly to no avail.  In *Notari v. Denver Water Dep't.*, 971 F.2d 585 (10th Cir. 1992), we noted the presumption of invidious intent created by establishing a prima facie case under *McDonnell Douglas* arises precisely *because* the plaintiff belongs to a disfavored group.  *Id.* at 589 (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)("A prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on consideration of impermissible factors.").   When plaintiff is a member of a historically favored group, by contrast, an inference of invidious intent is warranted only when "'background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.'"  *Id.* at 588-89 (quoting  *Parker v. Baltimore & Ohio R.R. Co.*, 652 F.2d 1012, 1017 (D.C. Cir. 1981)).  *See also Livingston v. Roadway Express, Inc.*, 802 F.2d 1250 (10th Cir. 1986)(adopting *Parker* standard in reverse disparate impact cases and assuming, in dicta, that the standard would apply in disparate treatment cases, as well).  Mr. Adamson's facts fall far short of demonstrating "background circumstances" sufficient to create an inference of reverse discrimination under *Notari*'s standards.

In *Notari*, as in *Greene*, we recognized that plaintiffs are not limited to the *McDonnell Douglas* framework to prove intentional discrimination.  A plaintiff may rely either upon circumstantial evidence and the *McDonnell Douglas* presumption that arises

21

from it *or* present direct proof of discriminatory intent.  971 F.2d at 589.  Thus, Barry is entitled to prove, through direct evidence and without reference to *McDonnell Douglas*, that his termination was, in fact, motivated by the fact that he is a man.  It is not enough, however, for a plaintiff merely to allege that he was a qualified man who was treated differently than a similarly situated woman.  *See id.*  Instead, he must allege and produce evidence sufficient to support a reasonable inference that, *but for* his status as a man, the challenged decision would not have occurred.  *Id.*

To the extent statements that Mr. Adamson might "exert undue influence" over his wife and daughter are offered as "direct evidence" of discriminatory intent, they fall short of the standard because they are not linked, in any direct manner, to the characteristic upon which any actionable sex-based claim would be based, i.e., Adamson's gender.  They are, if anything, tied to Adamson's "familial status" and assumed supervisory role over his wife and daughter, neither of which implicate Title VII's prohibitions.  To the extent Adamson relies on this statement as evidence of MCDS's bias against *men*, it is circumstantial evidence that does not, without additional "background circumstances" within our contemplation in *Notari* and *Livingston*, give rise to any inference that MCDS terminated him on the basis of his sex.  To the contrary, it suggests only that Adamson, an at-will employee who was terminated from his job, happened to be a man.  Absent evidence tending to demonstrate that but for his being a man he would not have been terminated, no inference of sex-based discrimination is raised.

Mr. Adamson's Title VII claims fail as a matter of law without reference to MCDS's stated reasons for terminating him.

*Traditional Sex-Based Discrimination under Title VII -*
*Patricia and Jessica*

As previously noted, neither Patricia nor Jessica articulated their disparate treatment claims under this standard, opting instead simply to assert that discrimination against them as wife and daughter was sex-based and therefore within the purview of prohibited discrimination under Title VII. We have rejected this theory, and look now to determine whether the female Adamsons have articulated viable claims for discrimination independently of their claims based on familial status.

Generally stated, a prima facie case of discriminatory discharge under Title VII requires plaintiff to demonstrate that she (1) belongs to a protected class; (2) was qualified for her position; (3) was discharged; and (4) her position was not eliminated after her discharge. *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1229 (10th Cir. 2000)(applying *McDonnell Douglas*). *See Plotke v. White*, 405 F.3d 1092 (10th Cir. 2005). The standard is flexible, however, and may vary depending on the context of the claim and the nature of the adverse employment action alleged. *Plotke* at 1099 (citing *McDonnell Douglas*). Thus, the fact a plaintiff's job was or was not eliminated after her discharge is not necessarily conclusive of her prima facie case. "The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment

action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'" *Id* at 1100 (quoting *Kendrick* and *Burdine*).

The only evidence offered by Patricia and Jessica to establish this inference is the "undue influence" remark and the fact Defendants did not apply the MCDS anti-nepotism policy to fire a father and son also working for the company to support claims that they were fired because they were women. Neither fact, alone or together, raises the necessary inference of invidious intent necessary to establish a prima facie case of discrimination.

As previously stated with respect to Mr. Adamson, Plaintiffs revile the "undue influence" remark less as a sexist statement suggesting discriminatory motives vis á vis men or women, and more as a judgment disparaging of family members such as themselves working together as supervisor and subordinates. To the extent it can be viewed as the former, we note the remark is gender-neutral on its face and will not, without more, support an inference of discriminatory intent. As the district court noted, an isolated and ambiguous comment is generally considered too abstract to support an inference of discrimination. Aplt. App. III at 575 (citing *Stone*, 210 F.3d at 1140). Without more, moreover, an employee's subjective belief in a comment's invidious nature also does not support an inference of discriminatory intent. *Id.* (citing *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 397 (7th Cir. 1998)).

Patricia and Jessica's reliance on evidence of inconsistencies in Defendants' application of the anti-nepotism policy raises thornier issues. Plaintiffs articulate this evidence in terms of pretext, but there is no proscription in an appropriate case against

24

using pretext evidence to support a prima facie case if it indeed gives rise to an inference of actionable discriminatory intent. *See Mickelson*, 460 F.3d at 1317 (considering the employer's proffered reason for firing the plaintiff at the prima facie stage); *see also Wells v. Colo. Dept. of Transp.*, 325 F.3d 1205, 1216 (10th Cir. 2003)("[B]y considering an employer's proffered reasons for taking adverse action in the causal-connection portion of the prima facie case, we are assessing pretext evidence typically considered in a later phase of the *McDonnell Douglas* analysis.)

Specifically, Patricia and Jessica contend they were "treated differently in the terms and conditions of their employment as a result of their gender, female, as compared to male employees . . . [in] the discriminatory application of an anti-nepotism policy with defendant." R. I, 50-51. They point to two examples of nepotism at MCDS that they assert support their position, one involving a lower level male employee who supervised his part-time employee son, and another involving Sherry Plenert who supervised her daughter. According to Plaintiffs, Defendants' use of the anti-nepotism policy to terminate them and not these other employees creates an inference of discriminatory intent actionable under Title VII.[3]

---

[3] Again, the fact Barry as well as Patricia and Jessica use these examples as evidence of "discriminatory intent" suggest the real and only discrimination being challenged is Defendants' alleged animus towards them as family members, which we have rejected, and not as a man and two women. Indeed, the decision not to terminate in both cases negates the inference of discriminatory animus at all. Nevertheless, we continue with our analysis of any residual, independent Title VII claim on the part of the female Adamsons.

In an appropriate case, evidence that a gender neutral anti-nepotism policy is applied in a manner that disproportionately impacts women may give rise to an inference of sex-based discrimination without proof of discriminatory intent. *Thomas v. Metroflight, Inc.*, 814 F.2d 1506, 1509-10 (10th Cir. 1987)(citing *Dothard v. Rawlinson*, 433 U.S. 321 (1977)). To establish a prima facie of discrimination under this theory of relief, a plaintiff must show that the "facially neutral standards in question selects applicants for hire in a significantly discriminatory pattern." *Id.* at 1509 (quoting *Dothard* at 329). Unlike plaintiff's burden in a disparate treatment case, the burden is onerous, requiring her actually to "'*prove the discriminatory impact at issue*'" before availing herself of the presumption of discrimination afforded by the establishment of a prima facie case. *Id* at 1509 (citing *Johnson v. Uncle Ben's, Inc.*, 657 F.2d 750, 753 (5th Cir. 1981), *cert. denied*, 459 U.S. 967 (1982)(emphasis original)). Once established, however, a prima facie case of disparate impact shifts the burden of proof and is conclusive on the issue of discrimination unless defendant "*proves*" business necessity for the challenged practice to rebut the prima facie case. *Id.* (emphasis original).

This is not such a case and Plaintiffs' evidence falls far short of establishing any "significant" or statistically supported inference of discrimination in Defendants' application of their anti-nepotism policy. Under Plaintiffs' own view, the policy was applied to fire one man and his wife and daughter who were in a supervisory-subordinate status (the Adamsons) and not applied to fire a father and son or a mother and daughter in similar supervisor-subordinate roles. No discriminatory pattern or disproportionality as

26

between men and women is evident at all on these facts, and the inquiry could end on that basis alone. *See Thomas*, 814 F.2d at 1509-10 (discussing disagreements among various authors and authorities regarding what constitutes "substantial" or "significant" discriminatory impact in a given case, but ruling application of anti-nepotism rule in two instances to impact two women insufficient to prove violation of Title VII); *see Roche v. Wareham*, 24 F. Supp.2d 146, 153 (D. Mass. 1998)(collecting cases).

The different allocations of the burdens of proof and production in disparate treatment and disparate impact cases stem precisely from the different requirements for establishing the prima facie case. *Thomas* at 1509. Allowing Patricia or Jessica to create their inference of intent in a disparate treatment case with disparate impact evidence that would not support such an inference in its own right conflates the concepts. Disparate impact evidence cannot support an inference of sex-based discriminatory intent in a wrongful discharge case if it is insufficient to support an inference of sex-based discrimination in a disparate impact case. To hold otherwise allows two of the three Plaintiffs in this case to turn not-actionable familial status claims into actionable sex-discrimination claims without any nexus between Defendants' proffered reason for their termination and *sex*-based discrimination.

Based on the foregoing, we conclude that neither Patricia Adamson nor Jessica Curl has established a prima facie case of sex discrimination and affirm the entry of summary judgment against them on their claims without reference to MCDS's proffered reasons for their terminations. Assuming, for the sake of argument, however, that they

27

had established a prima facie case of discriminatory discharge under *Kendrick* and *Plotke* based on their status as women, we agree with the district court that their circumstantial evidence is insufficient to raise an inference of pretext under *McDonnell Douglas* and any "direct evidence" of discrimination (in the form of comments that they would be "unduly influenced" by Mr. Adamson) is insufficient to raise an inference of discriminatory intent independently of *McDonnell Douglas*. Defendants are entitled to summary judgment on the female family members' Title VII discrimination claims.

### III. CONCLUSION.

Title VII only prohibits discrimination on the basis of certain, invidious factors. Employers are free to terminate at-will employees for any other reason – however unfair, unwise, or even erroneous – so long as it is not unlawful. *See Neal v. Roche*, 349 F.2d 1246, 1252 (10th Cir. 2003); *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1321 (10th Cir. 1992). As at-will employees, the Adamsons were not entitled to an explanation from MCDS or the board of directors for their terminations. Having been given some (the anti-nepotism policy, concerns about money transfers Mr. Adamson made from MCDS to CKK, the elimination of Jessica's job), the assertion that MCDS applied its policy inconsistently or that Mr. Adamson was later cleared of any malfeasance does not create an inference that, but for Mr. Adamson's age or each family members' respective gender, the terminations would not have occurred.

28

WE AFFIRM the entry of summary judgment in favor of Defendants and against Plaintiffs on Barry Adamson's ADEA claim as well as on each of Barry, Patricia and Jessica's Title VII claims. Finding no abuse of discretion in the district court's decision to decline to exercise supplemental jurisdiction over the state law wage and defamation claims under 28 U.S.C. § 1367(c)(3), we also AFFIRM the district court in that regard.