**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 12, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MELANIE M. VINEZ,

     Plaintiff - Appellant,

v.

SKY CHEFS, INC.,

     Defendant - Appellee.

No. 15-1314
(D.C. No. 1:14-CV-00223-PAB-KMT)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

Melanie M. Vinez appeals the district court's grant of summary judgment to

her former employer, Sky Chefs, Inc., on her discrimination claim brought under the

Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-213.  Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm the district court's judgment.

I

Sky Chefs operates out of Denver International Airport and provides catering

services to various airlines.  Ms. Vinez was hired by Sky Chefs in June 2010 as a

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

Transportation Manager. On June 20, 2011, she went on medical leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-54, for treatment of breast cancer. She was notified at that time that her position would need to be filled but she would be reinstated to a similar position when she returned. Ms. Vinez exhausted her FMLA leave in September 2011, and Sky Chefs extended her on medical leave as an accommodation under the ADA until she was ready to return to work in June 2012. On June 18, 2012, Ms. Vinez contacted Sky Chefs' human resources manager, Cheryl Williams, and told her that she had been medically cleared to return to work by her doctor. The next day, June 19, Ms. Vinez met with Ms. Williams, who briefly introduced her to the newly hired general manager, Robert Mower. Mr. Mower was responsible for making managerial hiring and firing decisions, and Ms. Williams told him that Ms. Vinez "had just been cleared from medical leave and was coming back to work." Aplt. App. at 162.

On July 2, however, Mr. Mower was notified of a corporate restructuring, called Project Laser, which would eliminate a single, mid-level management position of Director of Operations. Under the restructuring implementation guidelines, the Director of Operations, Derek Moon, could be laid off or moved to another position. *See id.* at 371, 375. At the time, there was an available lower-level Food Manager position that was lateral to Ms. Vinez's job as Transportation Manager, but rather than offer that job to Ms. Vinez, Sky Chefs attempted to create a different job for her as P.M. Manager on Duty. Ms. Vinez stated in her affidavit that Ms. Williams offered her that job on July 3, but her airport security badge had not been re-authorized. The position was never actually created, though, because the restructuring rendered it financially unfeasible. And

2

some two to three weeks after learning of the restructuring, Mr. Mower offered the Food Manager position to Mr. Moon, who accepted the job. Mr. Mower testified that he never considered offering the Food Manager position to Ms. Vinez, *id.* at 185, and that when he discussed the position with Mr. Moon, he did not know she was returning, *id.* at 189-90. Mr. Mower ultimately decided to lay off Ms. Vinez on September 14, 2012. He maintained that the sole reason she was laid off was because "we did not have an open position to bring her back to." *Id.* at 182.

Ms. Vinez subsequently filed this action, claiming retaliation under the FMLA, discrimination under the ADA, and outrageous conduct under state law. The district court granted summary judgment to Sky Chefs on the federal claims and declined to exercise supplemental jurisdiction over the state-law claim, but Ms. Vinez challenges only the disposition of her ADA claim on appeal. *See Conroy v. Vilsack*, 707 F.3d 1163, 1170-71 (10th Cir. 2013) (deeming claim abandoned where plaintiff failed to advance any relevant arguments on appeal). Applying the burden-shifting framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), the district court concluded Ms. Vinez failed to either establish a prima facie case of discrimination or show that Sky Chefs' proffered reason for the layoff was pretext for discrimination.

On appeal, Ms. Vinez relies entirely on evidence of pretext to satisfy her prima facie case. Among other things, she contends that because there is a fact issue regarding whether Sky Chefs' proffered reason for terminating her—there were no available jobs—was true, she has established a prima facie case of discrimination.

3

She also contends the same evidence shows that Sky Chefs' proffered reason was pretext for discrimination.

## II

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1266 (10th Cir. 2015). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)). In conducting our review, "we consider the evidence in the light most favorable to the non-moving party," but "unsupported conclusory allegations do not create a genuine issue of fact." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011) (brackets and internal quotation marks omitted).

Because Ms. Vinez relies on circumstantial evidence, our review is guided by the burden-shifting framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 & n.3 (10th Cir. 1997). Under this framework, Ms. Vinez must establish a prima facie case of discrimination. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014). If she makes this initial showing, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action, upon which the burden shifts back to Ms. Vinez to show a genuine issue of material fact whether the employer's proffered reason is pretext for discrimination. *Id.*

Under the first step of *McDonnell Douglas*, Ms. Vinez must establish a prima facie case by showing that "(1) she is disabled within the meaning of the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) she was discriminated against because of her disability." *Osborne*, 798 F.3d at 1266 (internal quotation marks omitted). "While the elements of a prima facie case under the *McDonnell Douglas* framework are neither rigid nor mechanistic, their purpose is the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008). "In the absence of facts tending to establish this initial inference, plaintiff is not entitled to the presumption of discrimination and defendant is not required to defend against the charge." *Id.*

The parties do not dispute that Ms. Vinez was disabled while undergoing cancer treatment for purposes of satisfying the first element of her prima facie case. Although the parties dispute the second element—whether she was qualified for the Food Manager position—the district court assumed without deciding that she was "a qualified individual," Aplt. App. at 355, so we will as well. Thus, we proceed to the third element of the prima facie case: whether Ms. Vinez was discriminated against because of her disability. The third element requires that Ms. Vinez show she was laid off "under circumstances which give rise to an inference that the termination was based on [her] disability." *Smothers*, 740 F.3d at 544 (internal quotation marks omitted). "This burden is not onerous, but it is also not empty or perfunctory." *Morgan*, 108 F.3d at 1324

5

(internal quotation marks omitted). It "requires the plaintiff to present some affirmative evidence that disability was a determining factor in the employer's decision." *Id.* at 1323. Once the plaintiff presents such evidence, "if the trier of fact finds it credible, and the employer remains silent, she would be entitled to judgment as a matter of law." *Id.* at 1324.

Ms. Vinez attempts to establish the third element of her prima facie case by citing—not affirmative evidence that her disability was a determining factor in Mr. Mower's decision—but evidence that he gave a false explanation for why she was laid off. Specifically, she contends it was untrue that there were no jobs because the Food Manager position was available when Mr. Mower knew she planned to return. She argues that Mr. Mower knew she was returning in June, when Ms. Williams told him, but rather than offer her the job, he gave it to Mr. Moon and denied knowing that she was returning. Although Ms. Vinez acknowledges that such evidence of pretext is usually evaluated at the later stage of the *McDonnell Douglas* analysis, she points out that we do "not require plaintiffs to 'ration' their evidence between the prima facie case and pretext stages." Aplt. Br. at 21 (quoting *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1218 (10th Cir. 2003)).

That may be correct, but Ms. Vinez must still produce sufficient probative evidence to establish her prima facie case. *See Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) ("If the plaintiff does not establish a prima facie case, [her] entire case fails."). And without some affirmative evidence that her disability was a determining factor in Sky Chefs' decision to terminate her, this evidence of pretext alone

6

fails to show that she was laid off under circumstances giving rise to an inference of discrimination. Indeed, as we explained in *Adamson*, the type of pretext evidence offered here by Ms. Vinez is not affirmative evidence that disability discrimination was the operative motive behind the decision to select her for layoff:

> By conflating evidence tending to cast doubt on an employer's stated reasons for an employment decision with the burden of establishing an inference of actionable discriminatory animus in the first instance, Plaintiffs seek to gain the benefit of that inference without having to establish it. Without a demonstrable nexus between aspersions cast on an employer's stated reasons and invidious intent, evidence of "pretext" merely establishes that an employer's stated reason for its actions may not be its real or only reason. It does not establish that the real or "but-for" reason was unlawful discrimination.

514 F.3d at 1144.[1]

Here, without a prima facie case, the fact issue regarding whether Sky Chefs' proffered reason was true does not alone indicate that disability was a determining factor in Sky Chefs' decision to terminate her. Instead, it only suggests that Mr. Mower's stated reason may have been untrue or inaccurate. Perhaps he did not view her as being qualified for the job, or perhaps as a new general manager (he had only been on the job twelve days), he forgot she was returning. The record does not tell us, but neither does it suggest discrimination was a determining factor. And without more, the untruthfulness or inaccuracy of the reason does not, in and of itself, create an inference of discriminatory

---

[1] Our decision in *Wells v. Colorado Department of Transportation,* 325 F.3d 1205 (10th Cir. 2003), is not to the contrary. In *Wells*, the plaintiff showed evidence of pretext but also affirmative evidence of an unlawful retaliatory motive because the person who fired her was specifically accused of discrimination in her EEOC complaint and knew of its filing. *Id.* at 1217. Additionally, the timing of the plaintiff's termination was consistent with a retaliatory intent. *Id.*

intent to establish a prima facie case. Thus, Mr. Vinez may not benefit from an inference of discrimination that she has not established.

Ms. Vinez attempts to salvage her claim with three more pieces of evidence but none of this evidence permits an inference of discrimination. First, Ms. Vinez cites an alleged statement made by Ms. Williams on August 8, 2012. According to Ms. Vinez's affidavit, Ms. Williams informed her on that date that the company was restructuring and all employees on medical leave would be laid off:

> She informed me that [Sky Chefs] was undergoing some sort of restructuring. . . . She informed me that all of the directors of operation positions were being phased out and that the company would only fill open vacancies in each location. She told me that the company was going to lay off all of the employees who were out on medical leaves of absence or regular leaves of absence unless there was an open position for them . . . .

Aplt. App. at 163. Ms. Vinez contends this statement suggests discriminatory intent, but a plain reading indicates that *all* employees on leave, both those on medical and regular leave, would be laid off *unless* they had a job to return to. This statement permits no inference of discrimination, nor does it suggest pretext.

Second, Ms. Vinez cites the testimony of Sky Chefs' human resources director, Karen Damerow, who testified that she did not know what criteria were used to determine who would be laid off, particularly Ms. Vinez:

> Q How was Ms. Vinez identified for termination?
>
> A It was a process of saying, as I look at my team – and, again, this is my perception. I'm not going to pretend I know everything [Mr. Mower] was thinking. But he identified who he wanted in [the managerial positions]. And Ms. Vinez was not one of the people who was identified.

8

Q  And you don't know what criteria he used to make that determination?

A  No, I don't, not specifically.

Aplt. App. at 201.  But this testimony permits no inference of discrimination because there is no indication that Ms. Vinez's disability was a determining factor in the decision to terminate her.  Ms. Damerow simply testified that she did not know how Mr. Mower chose to layoff Ms. Vinez.  Ms. Vinez adds that there is also an inconsistency in Ms. Damerow and Mr. Mower's testimonies:  Ms. Damerow stated that Mr. Mower retained "the best performing people, . . . the right people for the role," *id.* at 220, but Mr. Mower testified that the only criteria he used to terminate Ms. Vinez was the fact that they "did not have an open position to bring her back to," *id.* at 95, 182.  Yet there is no discriminatory animus reflected in these statements, and any perceived inconsistency is understandable, given that Ms. Damerow admitted she did not know how Mr. Mower decided to layoff Ms. Vinez.

Finally, Ms. Vinez notes that Sky Chefs maintains a formal reduction-in-force policy and published a more specific set of guidelines to implement the restructuring.  Citing Mr. Mower's testimony that he terminated her without reviewing any documents, Ms. Vinez wrongly interprets his testimony to mean that he failed to comply with the restructuring guidelines and the reduction-in-force policy.  But Mr. Mower clearly reviewed and complied with the restructuring guidelines because he eliminated the Director of Operations position occupied by Mr. Moon.  Although Ms. Vinez says the guidelines "specifically instructed Mr. Mower to consider [her] for

9

Supervisor/Assistant Manager," Aplt. Br. at 21, the guidelines actually directed him to reassign department managers or designate them as "unassigned." *See* Aplt. App. at 375 ("[Department] Managers will be 1) reassigned to [one of the four managerial positions] or 2) re-assigned to a Supervisor position or 3) un-assigned."). There is no evidence that Mr. Mower failed to comply with this directive by declining to consider her for a supervisory role, particularly since she was not a department manager at the time. Nor is there any evidence that he terminated her in contravention of the reduction-in-force policy. Mr. Mower stated that he laid off Ms. Vinez because there were no jobs for her. This rationale, on its face, permits no inference of discriminatory animus, and Ms. Vinez has failed to show facts suggesting otherwise. Consequently, she cannot establish an initial inference of discrimination for purposes of satisfying her prima facie case and her claim must fail. *See Adamson*, 514 F.3d at 1146 ("In the absence of facts tending to establish this initial inference, plaintiff is not entitled to the presumption of discrimination and defendant is not required to defend against the charge.").[2]

## III

The judgment of the district court is affirmed.

Entered for the Court
Mary Beck Briscoe
Circuit Judge

---

[2] Although Ms. Vinez's arguments required that we evaluate her evidence of pretext, "[b]ecause we hold [she] failed to establish [her] prima facie ADA case, the issue of whether [Sky Chefs'] nondiscriminatory reason for terminating [her] was a pretext is irrelevant." *Taylor v. Pepsi-Cola Co.*, 196 F.3d 1106, 1111 n.2 (10th Cir. 1999).

10