FILED
United States Court of Appeals
Tenth Circuit

October 20, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JUANITA GARCIA,

      Plaintiff - Appellant,

v.

CITY OF FARMINGTON,

      Defendant - Appellee.

No. 17-2001
(D.C. No. 1:15-CV-00005-WJ-SCY)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **O'BRIEN**, and **BACHARACH**, Circuit Judges.

This appeal grew out of the City of Farmington's decision to fire

Ms. Juanita Garcia from her employment at a municipal power plant.

Ms. Garcia attributes the firing to (1) discrimination based on gender and

national origin and (2) retaliation for an earlier suit. Farmington justified

the firing on two alleged mistakes by Ms. Garcia that endangered the plant

---

[*]     The parties do not request oral argument, and it would not materially help us to decide this appeal. As a result, we decide the appeal based on the briefs. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).

    This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value under Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

and its workers. The district court granted summary judgment to Farmington, and we affirm.

## I. The Two Incidents

Farmington's power plant operates through a boiler that creates steam, which is used to spin turbines and generate electricity. Boiler pressure is controlled through operators like Ms. Garcia; if the pressure gets too high, the boiler may explode.

Operators control the pressure through a device that runs on a computer system. Using the computer system, operators set the pressure level for the device.

Ordinarily, the device starts at a pressure ranging from 300 to 375 pounds per square inch. This pressure increases to 405 pounds per square inch, which is the standard operating pressure. But on January 21, 2014, with Ms. Garcia at the helm, the pressure skyrocketed to 451 pounds per square inch. Ms. Garcia insists that she could not enter a set point for the pressure because the computer malfunctioned. A coworker supports Ms. Garcia's account.

Farmington investigated the incident and noted an earlier incident that had taken place in 2012. In the 2012 incident, Ms. Garcia had trouble controlling the pressure and it rose to 424 pounds per square inch before a supervisor told Ms. Garcia how to fix the problem.

2

In light of the 2012 and 2014 mishaps, Farmington officials decided to fire Ms. Garcia. She characterizes the firing as discriminatory and retaliatory; in contrast, Farmington insists that it fired Ms. Garcia because the two incidents could have resulted in injuries or deaths and damage to the power plant.

## II.     The *McDonnell Douglas* Framework

The discrimination and retaliation claims required the district court to apply the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, Ms. Garcia had an initial burden to establish a prima facie case. *McDonnell Douglas*, 411 U.S. at 802. Farmington assumed, for the sake of argument, that Ms. Garcia had satisfied this burden.

With this assumption, Farmington needed to give a legitimate, nondiscriminatory reason for the firing. *Id*. Farmington contends that it satisfied this requirement by relying on Ms. Garcia's two failures to keep the boiler pressure within safe limits.

As discussed below, Farmington articulated a legitimate and nondiscriminatory explanation. Thus, Ms. Garcia needed to demonstrate that this explanation was pretextual. *Id*. at 804.

## III.     The Admissibility of Lay Testimony

Ms. Garcia's main challenge involves the admissibility of testimony about her observations during the 2014 incident. Ms. Garcia and a

3

coworker stated under oath that the computer had shown a malfunction, preventing anyone from setting the pressure. Farmington disputed this account, denying any malfunction. In support, Farmington hired an expert witness who stated under oath that the device had not malfunctioned.

Farmington used this expert testimony to support a motion for summary judgment. To rebut that testimony, Ms. Garcia proffered testimony by herself and a coworker about their observations during the 2014 incident. But the district court excluded the proffered testimony. Ms. Garcia argues that this ruling was erroneous, tainting the district court's grant of summary judgment and denial of a motion to alter or amend the judgment. We reject Ms. Garcia's argument.

The challenge involves rulings on two motions: (1) Farmington's motion for summary judgment and (2) Ms. Garcia's motion to alter or amend the judgment. We would ordinarily employ different standards of review when addressing the rulings on these motions: For summary-judgment rulings, we typically apply de novo review; for rulings on motions to alter or amend the judgment, we typically review only for an abuse of discretion. *See Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013) (de novo review of summary-judgment rulings); *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1228 (10th Cir. 2016) (abuse-of-discretion review for rulings on motions to alter or amend judgments). But here the issue on summary judgment involves the admissibility of

4

testimony, which is reviewed only for an abuse of discretion. *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1212 (10th Cir. 2011). Thus, we apply the abuse-of-discretion standard to review both the grant of summary judgment and the denial of the motion to alter or amend the judgment.

In our view, the district court had the discretion to exclude the proposed testimony by Ms. Garcia and her coworker. But even if the district court had allowed the testimony, it would not have supported Ms. Garcia's theory of liability.

Ms. Garcia and her coworker would have testified that the computer did not allow them to set the pressure level because the computer monitor toggled between the manual and automatic settings. The parties agree that this testimony involved an opinion and that Ms. Garcia and her coworker could not provide opinion testimony as expert witnesses. But Ms. Garcia and her coworker insist that they should have been allowed to give opinion testimony as lay witnesses. The district court disagreed, and this ruling fell within the court's discretion.

Lay-opinion testimony is governed by Federal Rule of Evidence 701, and "[k]nowledge derived from previous professional experience falls squarely within the scope of Rule 702 and thus by definition outside of Rule 701." *James River Ins. Co.*, 658 F.3d at 1215 (internal quotation marks omitted). Ms. Garcia and her coworker sought to testify about

5

precisely that kind of knowledge. But even if Ms. Garcia and her coworker had testified as lay witnesses, the testimony would not have affected Farmington's entitlement to summary judgment because the underlying claims involved discrimination and retaliation rather than an incorrect assignment of blame.

Ms. Garcia lacked direct evidence of discriminatory or retaliatory intent, so she relied on circumstantial evidence. To evaluate that evidence, the district court had to apply the *McDonnell Douglas* framework. *Adamson v. Multi Community Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). That framework involves three steps. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

The first step was Ms. Garcia's establishment of a prima facie case, and Farmington assumed that Ms. Garcia had satisfied this step. This assumption required Farmington to give a legitimate, nondiscriminatory reason for the firing. *Id.* at 802. Farmington satisfied this requirement by attributing the firing to Ms. Garcia's mistakes in allowing the boiler pressure to rise to unsafe levels in two separate incidents. In attributing the firing to a neutral, legitimate reason, Farmington had no obligation to present supporting evidence. Thus, Farmington's expert testimony was irrelevant at this step. *See Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1224 (10th Cir. 2007) (stating that the second step of *McDonnell Douglas*

6

did not require the employer to "prove that the reason relied upon [had been] bona fide" (internal quotation marks omitted)).

To rebut Farmington's explanation, Ms. Garcia had to show pretext. She could make this showing by presenting evidence that Farmington's justification was weak, implausible, inconsistent, or contradictory. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1218 (10th Cir. 2013). But Ms. Garcia's proposed testimony would not have suggested weaknesses, implausibilities, inconsistencies, or contradictions in Farmington's explanation.

Before hiring the expert witness, Farmington blamed Ms. Garcia for mishandling the 2014 incident when the boiler pressure increased. Farmington alleges that Ms. Garcia was wrong in thinking that the device had malfunctioned, but so what if she had been right? Regardless of whether the device had malfunctioned, Ms. Garcia admitted that the boiler pressure had increased too fast and had been too high, that she had failed to create a work order for the device after it allegedly malfunctioned, that she had not told anyone about the malfunction until a week after the incident, and that she had failed to note the malfunction in the operations log book. Thus, Ms. Garcia implicitly admitted that she had mishandled the incident even if the device had malfunctioned as she claimed. In light of this implicit admission, Ms. Garcia's proposed testimony would not have suggested any weaknesses, implausibilities, inconsistencies, or

contradictions in Farmington's explanation for the firing. Thus, the district court properly granted summary judgment to Farmington.

## IV. Consideration of Ms. Garcia's Evidence

Ms. Garcia also contends that the district court ignored eight categories of evidence. This contention mischaracterizes the ruling. The district court explained that it had omitted discussion of immaterial incidents and alleged facts not supported by Ms. Garcia's citations. This explanation was appropriate, for the district court had no obligation to comb the record when Ms. Garcia's cited evidence did not support her factual allegations. *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1223 (10th Cir. 2008).

## V. The District Court's Reliance on *Kendrick v. Penske Transportation Services, Inc.*

The district court explained that the critical inquiry is how the facts appeared to the individual who decided to fire Ms. Garcia, not Ms. Garcia's evaluation of herself. For this explanation, the court cited *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220 (10th Cir. 2000). Ms. Garcia argues that *Kendrick* is distinguishable because in that case the employee failed to present evidence undermining the employer's honest belief.

But the district court did not state that the facts in *Kendrick* were identical or even similar. The court cited *Kendrick* merely for the need to

8

view the facts as they appeared to the employer's decisionmaker, which is precisely what *Kendrick* said. *See Kendrick*, 220 F.3d at 1231 ("[A] challenge of pretext requires us to look at the facts as they appear to the person making the decision to terminate plaintiff."). Thus, the district court did not err in its use of *Kendrick*.

## VI. Farmington's Allegedly Negative Perception of Ms. Garcia

Ms. Garcia also asserts that she was viewed by Farmington as divisive, frustrating, and controversial. But it is not unlawful to fire someone for being divisive, frustrating, or controversial. To prevail, Ms. Garcia had to prove that her firing constituted

- retaliation for her earlier suit or

- discrimination based on gender or national origin.

*See Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1176 (10th Cir. 1996) (retaliation); *Sanchez v. Phillip Morris, Inc.*, 992 F.2d 244, 246 (10th Cir. 1993) (discrimination). Thus, Ms. Garcia's characterization of Farmington's perception of her (divisive, frustrating, and controversial) cannot support liability. *See Sanchez*, 992 F.2d at 248 (stating that even if the employer's stated reason was pretextual, there was insufficient evidence of discrimination "as opposed to a mere mistake, favoritism or some other reason").

\* \* \*

9

For these reasons, the district court did not err in (1) granting summary judgment to Farmington or (2) denying Ms. Garcia's motion to alter or amend the judgment.

Affirmed.

Entered for the Court


Robert E. Bacharach
Circuit Judge